# EXHIBIT

# A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
COMMERCIAL DIVISION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                            :

BRAD HODNETT AND CYNTHIA HODNETT,  :
Derivatively on Behalf of Nominal Defendant,  :
PIPINGusa, LLC,  :
                     Plaintiffs,  :   **Index No.**
                               :
    -against-  :   <u>**SUMMONS**</u>
                               :

MEDALIST PARTNERS OPPORTUNITY  :
MASTER FUND II-A, L.P., MEDALIST  :
PARTNERS, L.P., GREGORY PETER RICHTER,:
MARC THALACKER, MARK THEETGE,  :
MARY L. GRAYBEAL and KRAH USA LLC,  :
                               :
                   Defendants.  :
                               :
       and  :
                               :
PIPINGusa, LLC,  :
                Nominal Defendant.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

To the above-named Defendants:

    You are hereby summoned and required to serve upon Plaintiffs' attorney an answer to the complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint served herewith.

    Under New York's Civil Practice Law and Rules § 503, venue is proper because a substantial part of the events and omissions giving rise to the claim occurred in New York County, New York.

Dated: November 23, 2020          By: /s/ R. Zachary Gelber_____
     New York, NY              R. Zachary Gelber
                                   Fern Mechlowitz
                                   347 West 36th Street, Suite 805
                                 New York, NY 10018
                                 Phone: 212-227-4743
                                 *Attorneys for Plaintiffs*

# EXHIBIT

# B

Case 1:21-cv-00038   Document 1-1   Filed 01/04/21   Page 4 of 27

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
COMMERCIAL DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BRAD HODNETT AND CYNTHIA
HODNETT, Derivatively on Behalf of Nominal
Defendant, PIPINGusa, LLC,

                             Plaintiffs,

      -against-

MEDALIST PARTNERS OPPORTUNITY
MASTER FUND II-A, L.P., MEDALIST
PARTNERS, L.P., GREGORY PETER
RICHTER, MARC THALACKER, MARK
THEETGE, MARY L. GRAYBEAL and KRAH
USA LLC,

                            Defendants.

      and

PIPINGusa, LLC

                       Nominal
                       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No.

**DERIVATIVE COMPLAINT**

**(Jury Trial Demanded)**

Brad Hodnett and Cynthia Hodnett ("Plaintiffs" or the "Hodnetts"), derivatively on behalf of nominal defendant PIPINGusa, LLC ("PIPINGusa"), by and through their attorneys, Gelber & Santillo PLLC, for their complaint against Mary L. Graybeal ("Graybeal"), Marc Thalacker ("Thalacker"), Mark Theetge ("Theetge"), Krah USA LLC ("Krah USA"), Gregory Peter Richter ("Richter"), Medalist Partners L.P. ("Medalist Partners") and Medalist Partners Opportunity Master Fund II-A, L.P. ("Medalist Fund", together with Medalist Partners, "Medalist") (collectively "Defendants"), and PIPINGusa (as "Nominal Defendant), allege on information and belief as follows:

1

Case 1:21-cv-00038   Document 1-1   Filed 01/04/21   Page 5 of 27

## NATURE OF THIS ACTION

1.      This is a derivative action brought for the benefit of Nominal Defendant PIPINGusa.

2.      Plaintiffs, Brad and Cynthia Hodnett, co-founded a company, PIPINGusa, with Defendants Mark Thalacker, Marc Theetge and Midge Graybeal. They created PIPINGusa to manufacture,  sell, and distribute modern engineered piping, pipe fittings and environmental solutions throughout the United States.  The plan centered on the exploitation of an exciting new German piping and fitting fabrication technology for large diameter, high pressure piping solutions utilizing high density polyethylene and polypropylene ("HDPE/PP") to the U.S. market.  The piping is less expensive to produce than steel, lasts longer, handles higher pressure, is easier to install and, given its increased efficiency, will serve a growing need to replace and build additional piping, pipe fittings and environmental solutions in the United States.  Together, the Hodnetts, Graybeal, Thalacker, and Theetge formed PIPINGusa, and spent countless hours developing a business plan, negotiating with piping technology counterparties, organizing the requisite funding, and negotiating with a municipality for the lease of industrial space.  In a classic usurpation of a corporate opportunity, Thalacker, Theetge, and Graybeal set up a separate corporation, Krah USA, through which they simply stole that opportunity from PIPINGusa (and its 50% owners, Brad and Cynthia Hodnett), diverted all of the contracts, and cut the Hodnetts out of the business that they had helped build and prepare to bring to market.

3.      In perhaps an even more blatant breach of its obligations, Medalist—a private equity fund that Brad Hodnett brought in to fund the initial stages of the project—simply took the confidential information provided to it by PIPINGusa, and used that information to fund Krah USA, the entity created by Thalacker, Theetge, and Graybeal.  What's worse, it was Medalist,

2

Case 1:21-cv-00038  Document 1-1  Filed 01/04/21  Page 6 of 27

seeking to maximize its ownership percentage in this promising company, which orchestrated the coup.  Of course, Medalist's decision -- to coopt the business concept brought to it by PIPINGusa to fund Krah USA in an identical venture -- was an egregious breach of Medalist's contractual obligations under a confidentiality and non-circumvention agreement drafted by Medalist and signed by it and PIPINGusa in October 2019 (the "Confidentiality Agreement").  In funding Krah USA, Medalist violated both its clear obligation not to use PIPINGusa's confidential information for any purpose other than to fund the transaction, and its obligation not to circumvent PIPINGusa in pursuing this opportunity.  Indeed, the entire purpose of the Confidentiality Agreement was to prevent Medalist (and other related parties) from pursuing (without PIPINGusa's involvement) the business venture that PIPINGusa was asking Medalist to fund.

4.      Given the efficiencies of HDPE/PP piping technology, and PIPINGusa's exclusive contract with a German company, Krah GmbH ("KHB"), to sell it west of Denver, PIPINGusa (working with its accountants and financial advisors) projected that it was a $250,000,000 opportunity over the next five years.  Enticed by the significant returns offered by its $15,000,000 investment, not only did Medalist clearly breach the parties' contract, but it aided and abetted Thalacker, Theetge, and Graybeal's wanton usurpation of PIPINGusa's corporate opportunities by encouraging them to set up a competitor and steal this business from their partners.  By cutting the Hodnetts out of the deal, Thalacker, Theetge, Graybeal and Medalist were able to convert the Hodnett's significant membership interest for themselves.  In a deal with such significant financial promise, this usurpation of a corporate opportunity and corresponding breach for Medalist, allowed these parties to take for themselves a greater piece of what promises to be a very large pie.

5.      This is a classic case of usurpation of a corporate opportunity, aided and abetted by a rapacious private equity fund.  Medalist, unsatisfied by the huge returns of the deal brought to it

by the Hodnetts, helped push the Hodnetts and PIPINGusa out of the deal, to increase its own stake.  In doing so, Medalist and Richter not only aided and abetted (indeed orchestrated) this clear usurpation of corporate opportunity, but clearly violated the non-circumvention and confidentiality provisions in the Confidentiality Agreement it signed with PIPINGusa.  Defendants should be enjoined from proceeding with their venture, a constructive trust should be created for all contracts and profits of Krah USA, and damages should be awarded.

## JURISDICTION AND VENUE

6.     This court has jurisdiction pursuant to CPLR §§ 301 and/or 302 over Defendants Graybeal, Theetge, Thalacker, Richter, and nominal defendant PIPINGusa.

7.     The court has jurisdiction over Medalist Fund and Medalist Partners pursuant to ¶ 13 of the Confidentiality Agreement between PIPINGusa and Medalist Fund, dated October 31, 2019, and pursuant to CPLR § 301.

8.     This court has jurisdiction over Krah USA pursuant to CPLR § 302.

9.     Venue is proper pursuant to CPLR § 503 because a substantial part of the events and omissions giving rise to the claim occurred in New York County.

## THE PARTIES

10.     Plaintiff Brad Hodnett is a founder, owner, member, manager and officer of PIPINGusa, and a resident of the state of New York, 10 Alden Place, Bronxville, NY 10708.

11.     Plaintiff Cynthia Hodnett is a founder, owner, member, manager and officer of PIPINGusa, and a resident of the state of New York, 10 Alden Place, Bronxville, NY 10708.

12.     Nominal Defendant PIPINGusa is a limited liability company formed under the laws of the state of Delaware.

4

13. Defendant Mary ("Midge") Graybeal is a founder, owner, member, and former officer and manager of PIPINGusa, and a resident of the state of Oregon, 70969 NW Lower Bridge Way, Terrebonne, OR 97760.

14. Defendant Thalacker is founder, owner, member, and former advisor and manager of PIPINGusa, and a resident of the state of Oregon, 70969 NW Lower Bridge Way, Terrebonne, OR 97760.

15. Defendant Theetge is the former officer (President), member, and manager of PIPINGusa and a resident of the state of Oregon, 12048 SW Caffall Lane, Tigard, OR 97224.

16. Krah USA is a Delaware LLC, created on December 12, 2020, by Theetge and Graybeal, and upon information and belief, Thalacker.

17. Defendant Medalist Fund is a limited partnership, with its principle place of business at 777 Third Avenue, Suite 1402, New York, NY 10017.

18. Defendant Medalist Partners is a limited partnership with its principle place of business at 777 Third Avenue, Suite 1402, New York, NY 10017. Medalist Partners is a registered investment adviser.

19. Greg Richter is the CEO of Medalist Partners and of Medalist Fund, and a resident of the state of New York.

## FACTUAL ALLEGATIONS

### *The Hodnetts agree to form a new business with Graybeal, Thalacker and Theetge*

20. In September 2019, Defendant Thalacker approached Brad Hodnett to discuss a potential venture. Thalacker wanted to create a company that would manufacture, sell and distribute modern engineered piping, pipe fittings and environmental solutions utilizing HDPE/PP solid wall technology and a specialized German fabrication technology which is unique in today's

5

marketplace, in Central Oregon for distribution regionally and throughout the United States. Compared to steel piping, which is currently used in most areas of the United States, HDPE/PP piping is less expensive to produce, lasts longer, and is more cost effective to install, can handle higher pressure and is more durable. Mr. Hodnett had more business experience than Thalacker, and Thalacker knew Mr. Hodnett as someone with the ability to make things happen.

21. By early October 2019, Thalacker and Mr. Hodnett had already decided to proceed quickly to form a business to manufacture these modern water pipes, jointly pursuing this exciting venture. Because Thalacker did not have adequate private sector or finance experience, and despite years of trying, had not been able come up with a viable business plan or secure financing to make this idea a reality, Thalacker reached out to the Hodnetts to assist with the finance and accounting side of the business. At the same time, Thalacker agreed to contribute the draft business proposal (initially conceived of as a public-private venture), which the Hodnetts would, and did, work to adapt. Thalacker also assured the Hodnetts that they could use the business plan as a starting point for developing their new company's plans. Thalacker thereby encouraged the Hodnetts to devote significant time, energy and money to the project.

22. The parties quickly agreed on terms. The Hodnetts agreed to build the new business with Thalacker (and his significant other, Midge Graybeal), and they named it PIPINGusa. They agreed that it would be owned 50% by the Hodnetts and 50% by Thalacker and Graybeal. Thalacker, however, wanted his share of the company to be technically owned by his significant other, Graybeal; because of his work in the industry, Thalacker did not want it to appear as if he had a conflict of interest. They all agreed that Thalacker would technically serve as a paid "consultant" to the company, whereas the other three owners – Brad Hodnett, Cynthia Hodnett and Graybeal – would be officers of the company, with Cynthia Hodnett serving as Managing

6

Member.  This made sense because Cynthia Hodnett had significant management experience. After further discussions, they also agreed that Mark Theetge—who had helped Thalacker develop the original business plan, was seasoned in the water piping industry, and had close relationships with individuals at KHB—should be offered a management position in the new company.  The parties communicated over the course of several weeks, and pushed the business forward, based on this understanding.

23.     After Medalist (through the work of Brad Hodnett) showed serious interest in the deal, signaling its likely role as the company's primary funding source, Medalist pushed to include Mark Theetge as a member, given his technical expertise.  The other members agreed to include Mark Theetge as a non-voting member, installed him as President of PIPINGusa, and agreed that he would share the company's profits and losses 37.5% and 37.5% (Hodnett and Thalacker/Graybeal), with Theetge receiving 25% of revenue.

24.     The parties also agreed that while they would jointly control the company, the Hodnetts would be primarily responsible for raising money, accounting, and business strategy, and Thalacker and Graybeal would primarily be responsible for operations, including building the plant, engineering, and the technical side of the venture.  Thalacker also agreed to take the lead in negotiating a lease for a manufacturing site that he had identified with the City of Prineville, Oregon because he claimed to have contacts within the City and the town boards that would need to approve a lease.

25.     After the Hodnetts agreed to form this new company with Thalacker, Graybeal, and Theetge, things moved quickly.  In the weeks that followed, the Hodnetts worked with Thalacker and Graybeal to substantially revise the previous business plan and proforma financial projections for the company, transforming it from a public-private partnership into a private company, and

7

worked to negotiate an exclusive supply agreement with KHB. They estimated that they needed to obtain initial financing from investors for approximately $15,000,000 in order to launch PIPINGusa's operations.

### *PIPINGusa shares its confidential information with Medalist pursuant to the parties' Confidentiality Agreement and Medalist subsequently agrees to fund PIPINGusa*

26.    In October 2019, Brad Hodnett started investigating potential financing partners for PIPINGusa. Mr. Hodnett suggested that it made sense to first approach Medalist Partners, a private equity firm in New York, and tried to set up a meeting with them because Mr. Hodnett and Thalacker knew one of the principals at Medalist Partners and its CEO, Greg Richter. Despite Thalacker's connection to Richter, he asked Mr. Hodnett to take the lead requesting financing from Medalist because this was not an area with which he was comfortable and Mr. Hodnett had far more business experience. It was only after Mr. Hodnett contacted Richter, and pitched him the business, that Medalist became interested in funding it.

27.    After initial discussions between Richter and Mr. Hodnett, Richter sent Mr. Hodnett a fully drafted Confidentiality Agreement on behalf of one of Medalist Partner's funds, Medalist Fund. The arrangement, drafted solely by Medalist without any input or comments by PIPINGusa, was simple—PIPINGusa would share its business plan and all related documents and information with Medalist, so Medalist could consider whether to fund the nascent company. In exchange, Medalist agreed to two central concepts: (1) the business proposal and related documentation would be kept strictly confidential, and (2) Medalist would not pursue the idea except in conjunction with PIPINGusa. The Confidentiality Agreement clearly prohibited Medalist Fund and its Representatives from pursuing a similar investment with any parties, other than PIPINGusa, based on the Confidential Information shared by PIPINGusa, as is typical of such agreements.

8

28.     The Agreement specifically applies to Medalist Fund's "Representatives", including but not limited to its "partners", such as Medalist Partners (the funds' general partner), and to partners and officers such as Richter himself.  Mr. Hodnett signed the Agreement on behalf of PIPINGusa.

29.     The Confidentiality Agreement provided the following:

a.  Confidential Information is defined broadly in paragraph 2 to include confidential and proprietary information shared by PIPINGusa, including product development, business plans, and any "current or planned business relationships."

b.  Paragraph 3(c) specifically provides that Medalist Fund and its Representatives "will not make any trading or investment decisions on the basis of any Confidential Information," other than with respect to Medalist's potential investment in PIPINGusa.

c.  Paragraph 9 contains a "non-circumvention" provision whereby Medalist Fund agreed on behalf of itself and its Representatives not to contact any party disclosed as Confidential Information in order to pursue the investment "without the involvement of" PIPINGusa.

30.     In November 2019, in reliance on the Confidentiality Agreement, PIPINGusa provided Medalist with significant information and details about, among other things, PIPINGusa's business plan, financial projections, potential sales, the proposed lease with the City of Prineville for PIPINGusa's manufacturing facility, and the terms of an exclusive supply contract that PIPINGusa was negotiating with KHB.

31.     PIPINGusa met with Medalist on November 14, 2020, in a meeting at which they discussed these items in detail.  Thalacker flew to New York on November 13, 2019, and he and Mr. and Mrs. Hodnett attended a meeting at Medalist's offices in New York City with Greg

9

Richter, Brian Herr, Chief Investment Officer, Jim Regan, Asset Management, and John Slonieski, Director of Private Credit.  The PIPINGusa presentation stated, "***Marc Thalacker and Brad Hodnett have formed PIPINGusa*** to manufacture HDPE . . . in Central Oregon" and they sought funding from Medalist Partners, through one of their funds, for their new company.   Following this meeting, PIPINGusa continued to provide confidential information regarding PIPINGusa and its business plan to Medalist in response to its questions.

32.     In late November, Medalist tentatively agreed to provide the $15,000,000 in financing that PIPINGusa needed in order to fund the business and enable it to enter into the exclusive supply contract with KHB, subject to due diligence.  Mr. Hodnett primarily led the negotiations with Medalist regarding the terms of the financing.

33.      After Medalist promised to provide PIPINGusa with funding, Theetge, Thalacker, and Mr. Hodnett worked hard to finalize the terms of the exclusive supply contract with KHB.

### *PIPINGusa works to finalize the lease of its manufacturing site with the City of Prineville*

34.     After Medalist agreed to provide financing, PIPINGusa also worked to finalize the terms of the lease for a manufacturing site with the City of Prineville, Oregon.

35.     In or around the last week of November, officials with the City of Prineville reviewed and accepted the changes that PIPINGusa proposed for the lease-to-own arrangement, which were very beneficial for PIPINGusa.

36.     The last step in the process was for the lease to be reviewed by PIPINGusa's attorney and Prineville's attorney, and then for it to be approved by the town boards. Thalacker reported that he received indication that the lease would be approved.

10

Case 1:21-cv-00038  Document 1-1  Filed 01/04/21  Page 14 of 27

***PIPINGusa works feverishly to provide Medalist with all the required paperwork for the
investment and completes its formation as a Delaware LLC***

37.     The Hodnetts, Thalacker, Graybeal and Theetge worked feverishly to provide
Medalist with all the paperwork it required to document the financing arrangement so that they
could sign the exclusive supply agreement with KHB.  On behalf of PIPINGusa, Mr. Hodnett
consulted with accountants, and Mrs. Hodnett hired lawyers to draft PIPINGusa's formation
documents and memorialize everything that had been agreed.  Cynthia Hodnett completed
PIPINGusa's formation as a Delaware LLC on December 2, 2019.

38.     On behalf of the company, Mr. Hodnett also engaged in discussions with Bill
Coffield, a potential investor in the company.  Mr. Hodnett required Mr. Coffield to sign a non-
disclosure agreement before sending him any of PIPINGusa's confidential information.

39.     Throughout the early part of December, PIPINGusa continued to provide
confidential information regarding its business plan, financial projections, supply contract
arrangement and manufacturing facility lease to Medalist.  The principals of PIPINGusa continued
to rely on the expectation of confidentiality when providing this information.

***PIPINGusa signs the exclusive supply agreement with KHB at Medalist's office
and Medalist confirms that it will fund the deal***

40.     After receiving a commitment from Medalist that it would provide the $15,000,000
in funding, PIPINGusa invited a representative from KHB to travel from Germany to New York,
NY in order to meet with the Hodnetts, Theetge, and Medalist and so that the parties could execute
the exclusive supply agreement with KHB.

41.     The parties held a meeting at Medalist's offices in New York on December 10,
2019.  The Hodnetts and Theetge attended on behalf of PIPINGusa; Richter, James Regan and
James Murnane attended on behalf of Medalist; and a representative from KHB was present as

11

Case 1:21-cv-00038   Document 1-1   Filed 01/04/21   Page 15 of 27

well. At the meeting, Richter, acting on behalf of Medalist, directed PIPINGusa to sign the agreement with KHB, based on Medalist's promise and oral agreement that Medalist would fund PIPINGusa and the exclusive supply agreement with KHB. Theetge, acting as President of PIPINGusa, executed the contract on its behalf, in reliance on the promises made by Richter and Medalist. The mood at the meeting was celebratory and everyone clapped when Theetge and KHB executed the contract.

42.     Later that day, Mr. Hodnett sent a draft of PIPINGusa's operating agreement to Medalist, copying in Thalacker. Thalacker wrote to the Hodnetts later that night that he would need the company's attorney to explain the operating agreement to him.

### Thalacker, Theetge, and Graybeal breach their fiduciary duties to PIPINGusa and, with Medalist's encouragement, form a completing company, Krah USA to usurp PIPINGusa's corporate opportunities for themselves

43.     The following day, on December 11, 2020, Thalacker cryptically told Brad Hodnett that he, Theetge and Graybeal no longer wanted to be a part of PIPINGusa because of the content of the draft operating agreement, which had just been drafted by PIPINGusa's lawyers. Soon thereafter, Medalist stopped communicating with the Hodnetts and never provided the financing that it promised to PIPINGusa. PIPINGusa was therefore unable to fund the contract that it had executed with KHB (with Theetge signing as President), and lost the contract. The lost KHB contract reflected PIPINGusa's loss of the exclusive right to manufacture, sell and distribute piping utilizing the KHB HDPE/PP technology in the entire western United States, west of Denver.

44.     Theetge wrote to the Hodnetts, Graybeal, and Thalacker on the evening of December 11, 2019, copying Jim Regan of Medalist, indicating that he had spoken with Regan and that, after further consideration, Medalist was pushing PIPINGusa to amend its agreement to reflect a new one-third ownership split between Theetge, the Hodnetts, and Graybeal (as a proxy

12

for Thalacker), removing Cynthia Hodnett at managing member and effectively diluting the Hodnett's ownership and control.

45.     When Mr. Hodnett spoke to Theetge on December 11, 2019, he told him that he was very concerned about this effort to change the parties' agreement and that he intended to speak to Jim Regan to let him know what Thalacker, Theetge, and Graybeal were doing.  In response, Theetge suggested that it was Richter, Regan, and Medalist that were orchestrating the change— encouraging Thalacker, Theetge, and Graybeal to squeeze the Hodnetts out of the business.

46.     Just two days after their momentous December 10, 2019 meeting, at which Theetge (acting as PIPINGusa's President) signed the supply agreement with KHB to purchase millions of dollars of equipment and know-how, Theetge turned around, and together with Graybeal and Thalacker, and set up Krah USA, a competitor to PIPINGusa.

47.     In violation of the terms of the Confidentiality Agreement that Medalist Fund had entered into with PIPINGusa, Medalist agreed to provide financing to Krah USA—the new company that was set up by Thalacker, Theetge, and Graybeal to usurp the opportunity that PIPINGusa had spent months bringing to fruition.  In fact, it was Richter and Medalist that induced Theetge, Thalacker and Graybeal to form the new rogue operation to pursue and implement PIPINGusa's business plan.

48.     In order to make more money from, and own a greater percentage of, the venture, Theetge, Thalacker and Graybeal (encouraged by Richter and Medalist) agreed to abandon PIPINGusa and divert its contracts and opportunities, including the contract with KHB, to the new company they were in the process of forming.  By proceeding under a new company name and excluding the Hodnetts, the profit from the new venture would be split amongst fewer parties and so each of those parties would receive a larger share of the profits.

13

49.     Krah USA entered into the same exclusive supply agreement with KHB that PIPINGusa had entered into just days earlier, and Medalist Partners, acting, on information and belief, through Medalist Fund, provided the financing for the new transaction.  In fact, it appears that Krah USA continues under this contract through the present.  In doing so, Medalist Fund and its Representatives blatantly and intentionally violated the Confidentiality Agreement that Medalist Fund entered into with PIPINGusa by violating the non-circumvention clause and using confidential information to invest in the same project with another company.

50.     In addition, Krah USA has pursued the lease for the same manufacturing facility that PIPINGusa had previously identified and negotiated.  In fact, the lease appears to already have been signed, as Krah USA lists it as its office location.

51.     In short, the Defendants conspired to steal corporate opportunities that were owned and controlled by PIPINGusa – the development of the new piping business, including but not limited to the exclusive supply contract with KHB to sell HDPE/PP piping in the western United States, the agreement from Medalist to provide $15,000,000 in funding for the business, and the lease with the City of Prineville – and diverted them to their new company, Krah USA.

52.     The Hodnetts spent hundreds of hours (1) working on the PIPINGusa's business plan, proforma financial projections, and presentations, (2) reviewing, negotiating and/or drafting PIPINGusa's contract with KHB, the loan agreement with Medalist, PIPINGusa's operating agreements, and the lease for the manufacturing facility with Prineville, and (3) communicating with lawyers and other professionals and opening bank accounts for PIPINGusa, based on the agreement that we were equity owners in this venture.  The equity distribution and voting rights were all agreed upon.  The Hodnetts were induced to invest significant time and money into PIPINGusa based on the promises and agreements made by the Defendants.  The Hodnetts brought

14

Case 1:21-cv-00038   Document 1-1   Filed 01/04/21   Page 18 of 27

a level of expertise, professionalism and business acumen to a joint venture idea that had languished for years. Their hard work is what transformed this idea into a reality. Now, Thalacker, Graybeal and Theetge, along with Richter and Medalist as their co-conspirators, are reaping the benefits of what the Hodnetts were instrumental in building.

### DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

53.     Plaintiffs bring this action derivatively for the benefit of PIPINGusa to redress injuries suffered, and which continue to be suffered, by PIPINGusa as a direct result of the breaches of fiduciary duty, breaches of contract, and other wrongful conduct (set forth herein) by the Defendants.

54.     Plaintiffs are owners, members, managers and officers of PIPINGusa and were owners, members, managers and officers at the time of the wrongdoing alleged herein, and have been continuously since that time.

55.     Plaintiffs will adequately and fairly represent the interests of PIPINGusa and its members in enforcing and prosecuting its rights.

56.     PIPINGusa is named as a Nominal Defendant in this case solely in a derivative capacity.

57.     Prosecution of this action is in the best interests of the company.

58.     The wrongful acts complained of herein subject, and will continue to subject, PIPINGusa to continuing harm because the adverse consequences of the actions are still in effect and ongoing.

59.     As a result of the facts set forth herein, Plaintiffs have not made any demand on Defendants Thalacker, Graybeal, or Theetge to institute this action since demand would be futile and a useless act because those Defendants are incapable of making an independent and

Case 1:21-cv-00038  Document 1-1  Filed 01/04/21  Page 19 of 27

disinterested decision to institute and vigorously prosecute this action. The wrongful acts complained of herein show multiple blatant and egregious breaches by those Defendants of the fiduciary duties of loyalty.

## AS AND FOR THE FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty and Diversion of Corporate Opportunity Against Thalacker, Graybeal and Theetge)

60.     Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint as if fully stated herein.

61.     As managers, members and officers of PIPINGusa, Thalacker, Graybeal and Theetge owed fiduciary duties to PIPINGusa, including a duty to loyalty to act in the best interests of PIPINGusa and its owners.

62.     Alternatively, Thalacker, Graybeal and Theetge owed fiduciary duties to Plaintiffs because they had agreed to pursue a joint venture and were, in fact, pursuing a joint venture together.

63.     In breach of those fiduciary duties, Thalacker, Graybeal and Theetge founded a competing company, Krah USA and diverted a valuable corporate opportunity – the development of a piping company with an exclusive supply contract with KHB (for the entire American West region), the requisite funding from Medalist, and the leasing of a facility in Prineville, Oregon -- from PIPINGusa to Krah USA.

64.     Thalacker, Graybeal and Theetge jointly and voluntarily developed this opportunity in their capacity as members, managers and officers of PIPINGusa and benefitted from work done by their partners in PIPINGusa to exploit and develop the opportunity.

65.     If Thalacker, Graybeal and Theetge had not diverted this corporate opportunity to Krah USA, PIPINGusa would have been able to exploit the opportunity. The opportunity was not

16

Case 1:21-cv-00038 Document 1-1 Filed 01/04/21 Page 20 of 27

only within PIPINGusa's line of business, it was its entire purpose, and PIPINGusa clearly had an interest and tangible expectancy in the opportunity. By taking the opportunity for themselves, Thalacker, Graybeal and Theetge were placed in a position that was inimical with their duties to PIPINGusa.

66.     By reason of the breach of their fiduciary duties, Plaintiffs have been damaged in the amount equal to the lost profits that they would have made from the stolen corporate opportunity, plus prejudgment interest, costs, and fees. Plaintiffs are also entitled to injunctive relief, and the imposition of a constructive trust for all contracts and profits, due to the irreparable harm caused by these actions.

### AS AND FOR THE SECOND CAUSE OF ACTION
#### (Tortious Interference with Contract
#### Against Thalacker, Graybeal, Theetge, and Krah USA)

67.     Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint as if fully stated herein.

68.     Defendants Thalacker, Graybeal, Theetge, on behalf of themselves and Krah USA, also tortiously interfered with PIPINGusa's contractual relationships with Medalist Fund.

69.     Defendants Thalacker, Graybeal, Theetge, and Krah USA knew that Medalist orally agreed to provide $15,000,000 in funding to PIPINGusa so that it could fund the KHB supply contract. These defendants also knew that Medalist Fund had entered into the Confidentiality Agreement with PIPINGusa which prevented it from pursuing a similar investment based on Confidential Information that it received from PIPINGusa.

70.     However, Defendants Thalacker, Graybeal and Theetge set up a competing company, Krah USA, which entered into a new financing agreement with Medalist that PIPINGusa had previously agreed with Medalist just two days earlier. The Defendants took these actions

17

intentionally to induce Medalist Fund to breach its contracts with PIPINGusa, and their actions were a significant factor in causing these contractual breaches. These actions caused Plaintiffs significant damages and lost profits.

## AS AND FOR THE THIRD CAUSE OF ACTION
### (Tortious Interference with a Prospective Economic Advantage / Contractual Relationship Against Thalacker, Graybeal, Theetge, and Krah USA)

71. Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint as if fully stated herein.

72. Alternatively (to the tortious interference with contract claim), Defendants Thalacker, Graybeal Theetge, on behalf of themselves individually and Krah USA, also tortiously interfered with PIPINGusa's prospective economic advantage with Medalist.

73. Defendants Thalacker, Graybeal, Theetge, and Krah USA knew that PIPINGusa had entered into a supply contract with KHB dated December 10, 2019 and knew that Medalist had orally agreed to provide $15,000,000 in funding to PIPINGusa so that it could fund the KHB contract.

74. However, Defendants Thalacker, Graybeal and Theetge set up a competing company, Krah USA, which entered into a new financing agreement with Medalist and caused Medalist to abandon its previous agreement to providing PIPINGusa with $15,000,000 in financing. This caused PIPINGusa to default on its contract with KHB because it could not fund the contract.

75. Defendants Thalacker, Graybeal, Theetge, and Krah USA intentionally interfered with PIPINGusa's business relationship with Medalist, and used tortious, dishonest, unfair and improper means – by misappropriating PIPINGusa's trade secrets and breaching the fiduciary duty that they owed to PIPINGusa – in doing so. Their actions were a significant factor and a proximate

18

Case 1:21-cv-00038  Document 1-1  Filed 01/04/21  Page 22 of 27

cause of the breakdown of PIPINGusa's relationships with Medalist. These actions caused PIPINGusa significant damages and lost profits.

## AS AND FOR THE FOURTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets Under Federal and New York Law Against Thalacker, Graybeal, Theetge, and Krah USA)

76.     Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint as if fully stated herein.

77.     Defendants Thalacker, Graybeal and Theetge, on behalf of themselves individually and Krah USA, misappropriated the trade secrets of PIPINGusa by using PIPINGusa's proprietary business plans, financial projections, sales information, supply contract details, and other confidential information in breach of their fiduciary duties in order to establish a competing company, Krah USA, and divert PIPINGusa's valuable corporate opportunities to Krah USA.

78.     This information was extremely valuable to PIPINGusa, was developed as a result of extensive efforts and resources expended by PIPINGusa's members and officers, could not be easily duplicated by others, and gave PIPINGusa an advantage over competitors. PIPINGusa took measures to safeguard these trade secrets, including by requiring individuals outside the company to execute confidentiality agreements before disclosing PIPINGusa's trade secrets to them.

79.     Plaintiffs have been irreparably damaged as a result, and Plaintiffs are entitled to injunctive relief.

## AS AND FOR THE FIFTH CAUSE OF ACTION
### (Breach of Contract Against Medalist Fund)

80.     Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint as if fully stated herein.

81.     Medalist Fund and PIPINGusa executed a Confidentiality Agreement dated October 31, 2019.

82.     The agreement provided that Medalist Fund and its Representatives (including but not limited to Medalist Partners and Richter) would not discuss or use Confidential Information shared by PIPINGusa to pursue any investment opportunities other than its potential investment in PIPINGusa.  Confidential Information is defined broadly in paragraph 2 of the agreement to include confidential and proprietary information shared by PIPINGusa, including product development, business plans, and any "current or planned business relationships."

83.     In reliance on this agreement, PIPINGusa shared extensive proprietary information regarding PIPINGusa's business plan, its research and knowledge regarding HDPE/PP piping technology, the market for this technology, and PIPINGusa's contract with KHB.

84.     Medalist Fund subsequently breached that contract when it entered into an agreement to provide financing to a competing company, Krah USA based on Confidential Information previously provided to Medalist by PIPINGusa.

85.     The Confidentiality Agreement also contained a "non-circumvention" provision whereby Medalist Fund (on behalf of itself and its Representatives) agreed not to contact any party disclosed as Confidential Information in order to pursue the investment "without the involvement of" PIPINGusa.  Medalist has been in contact with Theetge, Thalacker, Graybeal, and KHB— parties to whom PIPINGusa and the Hodnetts introduced Medalist—in order to pursue the very same transaction that PIPINGusa had been negotiating with Medalist, with Theetge, Thalacker and Graybeal's new company, Krah USA.

86.     Medalist Fund's breach of the Confidentiality Agreement caused PIPINGusa irreparable damages and PIPINGusa is therefore entitled to damages, a constructive trust, and injunctive relief to prevent Medalist from further breaching the Confidentiality Agreement.

## AS AND FOR THE SIXTH CAUSE OF ACTION
### (Breach of Oral Agreement Against Medalist Fund)

87.      Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint as if fully stated herein.

88.      On or before December 10, 2019, Medalist agreed orally to provide PIPINGusa with $15,000,000 in funding so that PIPINGusa could fund its contract with KHB.  In reliance on that promise, PIPINGusa executed the agreement with KHB.

89.      Medalist's breach of its oral promise to provide the funding prevented PIPINGusa from being able to purchase the piping technology that it needed to operate its business.

90.      Medalist's breach of this oral agreement caused PIPINGusa significant damages in an amount to be determined at trial.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
### (Aiding and Abetting Breach of Fiduciary Duty
### Against Defendant Medalist Partners, Medalist Fund, and Richter)

91.      Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint as if fully stated herein.

92.      As members, managers and officers of PIPINGusa, Theetge, Thalacker, and Graybeal owed a fiduciary duty to PIPINGusa which they breached by diverting a valuable corporate opportunity to Krah USA for their own personal benefit.

93.      Richter, acting for himself and on behalf of Medalist, had actual knowledge of Theetge, Thalacker and Graybeal's breach of fiduciary duty to PIPINGusa and knowingly participated in that breach by providing substantial assistance, by encouraging Theetge, Thalacker and Graybeal to take these actions and funding their new business, based upon confidential information.

94.      PIPINGusa suffered significant damages as a result of that breach.

95. Medalist and Richter therefore aided and abetted Thalacker, Graybeal and Theetge's breach of fiduciary duty, causing Plaintiffs significant damages, including but not limited to all lost profits, in an amount to be determined at trial.

### AS AND FOR THE EIGHTH CAUSE OF ACTION
**(Misappropriation of Trade Secrets Under Federal and New York Law
Against Medalist Fund and Medalist Partners)**

96. Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint as if fully stated herein.

97. Medalist Fund and Medalist Partners disclosed, used, and relied on trade secrets of PIPINGusa – namely, its confidential business plan, financial projections, supplier information, and other proprietary information that was used by PIPINGusa and which gave PIPINGusa an advantage over competitors -- without PIPINGusa's consent, in deciding to invest and become a part-owner of Krah USA.

98. Medalist knew, or had reason to know, that those trade secrets were disclosed to it only because it agreed via the Confidentiality Agreement to keep those trade secrets confidential and not use them for any other purpose, other than to decide whether to invest in PIPINGusa. Medalist's use of those trade secrets was therefore a breach of the Confidentiality Agreement. Medalist also knew, or had reason to know, that Thalacker, Theetge and Graybeal, as managers, officers and members of PIPINGusa owed fiduciary duties to PIPINGusa and hence could not use PIPINGusa's confidential information and trade secrets as part of their Krah USA venture.

99. PIPINGusa's trade secrets were extremely valuable to the company and its competitor, Krah USA, and were developed after significant investment of time and money from PIPINGusa's owners and officers. PIPINGusa's trade secrets could not have been easily duplicated by others.

22

100.    Medalist's misappropriation of trade secrets caused Plaintiffs irreparable damage for which they are entitled to injunctive relief, including but not limited to the imposition of a constructive trust.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court enter a judgment awarding the following, as to all counts of its complaint:

1.    Damages in the amount to be determined at trial, plus pre-judgment interest;

2.    Disgorgement of any past or future profits that Thalacker, Graybeal and Theetge derive from their breach of fiduciary duty and tortious interference with contract and prospective contractual relations, by imposition of a constructive trust over those profits;

3.    An injunction against Thalacker, Graybeal and Theetge to prevent them from further misappropriating PIPINGusa's trade secrets;

4.    Disgorgement of any profits that Medalist has made, or may in the future make, from its investment in Krah USA, or any other related entities, as a result of its wrongful conduct and breaches of contract, by imposition of a constructive trust over those profits;

5.    An injunction against Medalist preventing them from further breaching the Confidentiality Agreement and misappropriating PIPINGusa's trade secrets;

6.    Costs, expenses, and attorneys' fees; and

7.    Such other relief as this Court may deem just and appropriate.

Dated: New York, New York
       November 23, 2020

GELBER & SANTILLO PLLC

By: /s/ R. Zachary Gelber
    R. Zachary Gelber
    Fern Mechlowitz
    347 West 36th Street, Suite 805
    New York, NY 10018
    Phone: 212-227-4743
    *Attorney for Plaintiffs PIPINGusa, Brad Hodnett and*
    *Cynthia Hodnett*

24