UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/12/2021

BRAD HODNETT and LISA HODNETT, derivatively on behalf of Nominal Defendant, PIPINGusa, LLC,

Plaintiffs,

-against-

MEDALIST PARTNERS OPPORTUNITY MASTER FUND II-A, L.P.; MEDALIST PARTNERS, L.P.; GREGORY PETER RICHTER; MARC THALACKER; MARY GRAYBEAL; MARK THEETGE; and KRAH USA LLC,

Defendants.

1:21-cv-00038-MKV

OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Brad and Cynthia Hodnett ("Plaintiffs") have moved for a preliminary injunction for the second time in two months. The justice presiding over the case in state court where it was initially filed found that their first attempt came "nowhere close" and denied the motion. [ECF No. 23-2 at 28:3; ECF No. 21-1.] Yet after the case was removed to this Court, Plaintiffs filed a virtually identical motion. Plaintiffs' motion borders on an abusive litigation tactic and filing. Plaintiffs are not entitled to a preliminary injunction. For the reasons discussed below, Plaintiffs' motion is DENIED.

## **BACKGROUND**[1]

In October 2019, Plaintiffs began working with Defendants Marc Thalacker, Mark Theetge, and Mary Graybeal to form a company that would manufacture, sell, and distribute modern-

---

[1] The following facts are drawn from the parties' submissions. Although there are many factual disputes, an evidentiary hearing is not required because "resolution of those disputes . . . will not affect [Plaintiffs'] entitlement to relief." *Commer v. McEntee*, 121 F. Supp. 2d 388, 392 n.4 (S.D.N.Y. 2000) (citing *Drywall Tapers & Pointers of Greater N.Y., Local 1974 v. Local 530*, 954 F.2d 69, 76–77 (2d Cir. 1992); and *Brown v. Giuliani*, 158 F.R.D. 251, 254 (E.D.N.Y. 1994)); *Dodge v. County of Orange*, 208 F.R.D. 79, 86 (S.D.N.Y. 2002) (noting that a hearing is unnecessary "when additional evidence will not change the court's finding" (citing *Republic of Philippines v. N.Y. Land Co.*, 852 F.2d 33, 37 (2d Cir. 1988))).

1

engineered piping. [ECF No. 22 ¶ 8; ECF No. 44 ¶ 7; ECF No. 45 ¶¶ 13, 15.] The group sought financing from Defendants Medalist Partners Opportunity Master Fund II-A, L.P., Medalist Partners L.P. (together, "Medalist"), and their CEO Gregory Peter Richter. [ECF No. 22 ¶ 15; ECF No. 44 ¶ 7; ECF No. 45 ¶ 17; ECF No. 47 ¶¶ 5–7.] Over the next two months, the parties exchanged information, discussed a business plan, and prepared and executed documents. [*See generally* ECF No. 22 ¶¶ 16–27; ECF No. 45 ¶¶ 15–26; ECF No. 47 ¶¶ 12–17.]

On December 2, 2019, Plaintiffs filed a certification of formation for PIPINGusa LLC ("PIPINGusa"), listing themselves as the company's two members. [ECF No. 22 ¶ 25; ECF No. 22-39; ECF No. 45 ¶ 26; ECF No. 47 ¶ 19.] On December 10, 2019, the parties met with a representative from Krah GmbH, a German supply company, and Theetge executed an exclusive supply contract on behalf of PIPINGusa. [ECF No. 22 ¶ 29; ECF No. 44 ¶ 14–16; ECF No. 45 ¶ 27; *see* ECF No. 18-10 at 20.] Meanwhile, Plaintiffs, Thalacker, Theetge, and Graybeal could not agree on their roles, responsibilities, and equity percentages in the business venture, which ultimately led to a falling out. [ECF No. 22 ¶¶ 30–33; ECF No. 44 ¶¶ 11–14, 17–25; ECF No. 45 ¶¶ 19–20, 24–26, 28–37; ECF No. 47 ¶¶ 18–26.]

Shortly thereafter, on December 12, 2019, Thalacker, Theetge, and Graybeal set up their own company, Krah USA LLC ("Krah USA"). [ECF No. 22 ¶ 34; ECF No. 44 ¶ 26.] Over the next few days, Krah USA entered into agreements with Medalist and Krah GmbH, which had nullified its contract with PIPINGusa because it had not received a required down-payment. [ECF No. 22 ¶¶ 35–37; ECF No. 44 ¶ 26; ECF No. 47 ¶ 28; *see* ECF No. 18-10 at 15, 19].

On February 14, 2020, Plaintiffs' counsel sent demand letters to Medalist and Thalacker, Theetge, and Graybeal threatening legal action for injunctive relief if a satisfactory settlement proposal was not extended by February 21, 2020. [ECF No. 21 ¶ 2; ECF No. 21-1.] The letter to

Medalist asserts that Medalist, *inter alia*, "invest[ed] in a competing company, Krah USA"; "pursue[d] the very same transaction that PIPINGusa had been negotiating with Medalist, with . . . Krah USA"; and "provid[ed] substantial assistance, by way of funding, to Krah USA." [ECF No. 21-1 at 3.] The letter to Thalacker, Theetge, and Graybeal claims that they "secretly form[ed] another company, Krah USA LLC, . . . to usurp PIPINGusa's corporate opportunity"; "registered Krah USA to do business in Oregon"; "attempted to interfere with PIPINGusa's relationships with Medalist [and Krah GmbH]"; and "proceeded with th[e] very same [business] opportunity without PIPINGusa, or Mr. and Ms. Hodnett." [ECF No. 21-1 at 7.] On February 28, 2020, counsel for Medalist responded denying any liability. [ECF No. 47 ¶ 41; ECF No. 47-3.]

Since December 2019, Krah USA has spent approximately $11 million on the purchase and installation of specialized equipment, the lease and retrofitting of a manufacturing plant in Oregon, the acquisition of production materials, the hiring of a dozen employees, and the commencement of manufacturing operations. [ECF No. 44 ¶ 27–28; ECF No. 45 ¶ 40; ECF No. 47 ¶ 38–40.] Krah USA is preparing to ship its first order pursuant to a $440,000 contract. [ECF No. 44 ¶ 29; ECF No. 45 ¶ 40.]

On November 23, 2020, Plaintiffs commenced this action in the Commercial Division of the Supreme Court of the State of New York, New York County, by filing the Complaint and a proposed order to show cause seeking a temporary restraining order ("TRO") and a preliminary injunction. [ECF No. 1.] On November 25, 2020, after a hearing with all parties present, the state court (Sherwood, *J.*) entered an Order declining to sign Plaintiffs' proposed order to show cause and denying Plaintiffs' application for a preliminary injunction without prejudice. [ECF No. 1-4 at 18–19.] Justice Sherwood found that (1) Plaintiffs failed to show irreparable harm because they inexcusably delayed in seeking injunctive relief, (2) granting the injunctive relief Plaintiffs sought

would be "highly prejudicial" to Defendants, and (3) Plaintiffs "can be fully compensated by a monetary award" if they prevail. [ECF No. 1-4 at 18–19.]

The case was timely removed to this Court on January 4, 2021. [ECF No. 1.] On January 15, 2021, Plaintiffs again filed a proposed order to show cause seeking a preliminary injunction. [ECF Nos. 19–22.] Plaintiffs seek broad injunctive relief, *inter alia*, (1) enjoining Medalist from providing any funding to or otherwise working with Krah USA (or any other companies or entities associated with Thalacker, Graybeal, Theetge for piping or project financing) and (2) enjoining Thalacker, Graybeal, Theetge, and Krah USA from dealing with Krah GmbH, conducting business with Medalist, or operating any pipe fabrication business in the United States. [ECF No. 19.] Defendants filed letters urging the Court not to sign the proposed order to show cause because Justice Sherwood had rejected the same application several months earlier and Plaintiffs inexcusably delayed in seeking injunctive relief. [ECF Nos. 23–24.] Plaintiffs responded arguing that they revised their application and that Justice Sherwood denied the earlier one incorrectly and without prejudice. [ECF No. 25.]

On January 20, 2021, the Court declined to sign the proposed order to show cause given Plaintiffs' pattern of delay and Justice Sherwood's decision denying Plaintiffs' earlier, similar application. [ECF No. 28.] However, the Court scheduled a hearing on Plaintiffs' motion for a preliminary injunction, briefing of which would be governed by the Local Rules. [ECF No. 28.] Defendants filed an opposition [ECF No. 42–47], and Plaintiffs filed a reply [ECF No. 48–50]. The Court heard oral argument telephonically on February 9, 2021, during which the Court denied Plaintiffs' motion, with an opinion more fully explaining the Court's ruling to follow.

**LEGAL STANDARD**

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, the movant must show "a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *ACLU v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)); *accord Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015); *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013).[2]

**DISCUSSION**

**I. Justice Sherwood's Ruling Is Entitled to Deference as Law of the Case**

Plaintiffs' application is foreclosed under the law of the case doctrine. This doctrine posits that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, ___ U.S. ____, 136 S. Ct. 709, 716 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)). A court "may depart from the law of the case for 'cogent' or 'compelling' reasons including an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" *Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009) (quoting *United States v.*

---

[2] The parties dispute the type of injunction Plaintiffs seek. [ECF No. 20 at 8 n.2; ECF No. 46 at 15–17; ECF No. 49 at 4–5.] "Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *N. American Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018) (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)). Because mandatory preliminary injunctions alter the status quo, the movant must meet a heightened standard of "a 'clear' or 'substantial' likelihood of success on the merits and . . . a 'strong showing' of irreparable harm." *People ex. rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (first quoting *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999); then quoting *Doe v. N.Y. Univ.*, 666 F.2d 761, 773 (2d Cir. 1981)); *accord N. American Soccer League*, 883 F.3d at 37. The Court need not resolve this dispute because Plaintiffs fail to satisfy the articulated less rigorous standard.

*Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002)). Courts are generally "reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court." *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005) (internal quotation marks and citation omitted); *see Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

The law of the case doctrine applies to pre-removal state court orders. *Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 710 (S.D.N.Y. 2002) (collecting sources); *see Firestone v. Berrios*, 42 F. Supp. 3d 403, 412 (E.D.N.Y. 2013) (applying law of the case doctrine and declining to reconsider identical legal issues raised and decided in state court); 18 James WM. Moore et al., Moore's Federal Practice § 134.22[3][c][i], Lexis (database updated June 2020).[3] Accordingly, there must be cogent or compelling reasons to depart from a pre-removal state court decision. *See Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40 (2d Cir. 1980) (per curiam) (finding that law of the case doctrine did not bar district court from revisiting state court decision found to be clearly erroneous).

Where a party presents the same allegations or factual record previously deemed deficient by a court, the law of the case doctrine forecloses reconsideration of the court's conclusion. *See, e.g.*, *U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*, No. 15-CV-4961 (LTS) (JLC), 2020 WL 2530180, at *8 (S.D.N.Y. May 19, 2020) (noting that a "subsequent attempt to replead the same legal claim under the same or similar facts would be precluded by the law of

---

[3] Pursuant to 28 U.S.C. § 1450, "[a]ll injunctions, orders, and other proceedings had in [an] action prior to removal shall remain in full force and effect until dissolved or modified by the district court." Thus, "whenever a case is removed, interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed." *In re Diet Drugs*, 282 F.3d 220, 232 n.7 (3d Cir. 2002) (quoting *Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988)); *see also Nasso v. Seagal*, 263 F. Supp. 2d 596, 608 (E.D.N.Y. 2003) (noting that pre-removal state court orders are "treated as though they had been entered by the federal court" (collecting cases)). Therefore, a pre-removal state court order "remains subject to reconsideration just as it had been prior to removal." *Resolution Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1316 (5th Cir. 1992) (quoting *Kline*, 845 F.2d at 1303).

the case doctrine"); *Ammar Textile (Pvt) Ltd. v. Contitrade Servs. Corp.*, No. 93 Civ. 237 (CSH), 1994 WL 115993, at *3 (S.D.N.Y. Mar. 30, 1994) (dismissing under law of the case doctrine because the "present complaint reasserts the same claim, setting forth essentially the same facts" as the previously dismissed complaint). When a motion is denied without prejudice, the law of the case doctrine does not bar consideration of a renewed motion where the movant presents new facts with arguments based on those facts. *See Massimino v. Fid. Workplace Servs., LLC*, 697 F. App'x 85, 86 (2d Cir. 2017) (summary order); *Bricklayers & Allied Craftsmen, Local Union No. 44 v. Corbetta Constr. Co., Inc.*, 511 F. Supp. 1386, 1390 (S.D.N.Y. 1981) (finding that application of the law of the case doctrine would be "inappropriate since [defendant's] motion to dismiss was denied [by the state court] without prejudice to its renewal after a factual hearing"); *see also L.A. Tr. Deed Mortg. Exch. v. SEC*, 285 F.2d 162, 165 (9th Cir. 1961) ("This petition was denied (without prejudice), because we did not desire to establish 'the law of the case' without a full scale hearing of all issues which were to be raised on appeal."); *In re Rosenblum*, 609 B.R. 854, 862–63 (Bankr. D. Nev. 2019) (finding that law of the case doctrine did not apply where plaintiff "offer[ed] evidence in support of the current Motion that was not part of the record in connection with the First Dismissal Order," which was entered without prejudice).[4]

---

[4] Insofar as courts have stated that a ruling on a motion for preliminary injunction motion does not constitute the law of the case, that is for purposes of further proceedings, specifically the merits of the case. *See Berrigan v. Sigler*, 499 F.2d 514, 518 (D.C. Cir. 1974) (noting that a decision "whether to grant or deny a preliminary injunction does not constitute the law of the case for the purposes of further proceedings and does not limit or preclude the parties from litigating the merits" (collecting cases)); *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 742 (2d Cir. 1953) (noting that legal conclusions and factual findings at the preliminary injunction stage "are subject to change after a full hearing and the opportunity for more mature deliberation"); *Alharbi v. Miller*, 368 F. Supp. 3d 527, 556 (E.D.N.Y. 2019) ("A district court's decision to grant a temporary or preliminary injunction 'does not constitute the law of the case and will not estop the parties nor the court as to the merits of the case.'" (quoting *SEC v. N. American Research & Dev. Corp.*, 59 F.R.D. 111, 113 (S.D.N.Y. 1972))); *Consumers Union of U.S., Inc. v. New Regina Corp.*, 664 F. Supp. 753, 760 (S.D.N.Y. 1987) (finding that Second Circuit decision vacating preliminary injunction was not the law of the case because it "did not decide the ultimate merits of plaintiff's claim" (collecting cases)).

Here, although Justice Sherwood denied Plaintiffs' motion without prejudice, Plaintiffs' renewed application in this Court is factually identical to the one filed in state court. [*Compare* ECF No. 22; ECF Nos. 22-1 to 22-57, *with* ECF No. 1-2 at 32–222; ECF No. 1-3 at 1–167.] Plaintiffs argue that their current application asserts three additional facts: (1) in November 2020, Medalist publicly announced its funding commitment to Krah USA [ECF No. 20 at 22 n.8; ECF No. 21 ¶ 4; ECF No. 22 ¶ 35; ECF No. 22-53]; (2) Plaintiffs "were delayed significantly by the global Covid-19 pandemic" [ECF No. 21 ¶ 3]; and (3) in December 2020, Krah GmbH issued a press release announcing its partnership with Krah USA and Medalist featuring a photograph of Theetge and the Krah GmbH representative from the December 2019 meeting [ECF No. 22 ¶ 37; ECF No. 22-48; ECF No. 22-54; *see* ECF No. 22 ¶ 4].

These revisions do not constitute new facts and do not warrant reconsideration of Justice Sherwood's ruling. The announcement by Medalist of its funding commitment to Krah USA was raised at the state court hearing. [ECF No. 23-2 at 7:25–8:9, 12:24–14:16, 25:12–25:16]. Similarly, Plaintiffs' alleged COVID-related delays were also raised at the state court hearing [ECF No. 23-2 at 7:22–7:24, 15:20–15:24, 19:9–19:21]—and explicitly rejected by Justice Sherwood [*see* ECF No. 23-2 at 25:17-25:22 ("So to say that, you know, the world has come to a screeching halt over all these months, my experience is different, sir.").] Finally, Plaintiffs alleged in their state court application that Krah USA executed the same contract with Krah GmbH that PIPINGusa had previously executed. [ECF No. 1-2 at 44 ¶ 37.] The photograph featured in Krah GmbH's press release adds nothing to the argument and has no bearing on the correctness of Justice Sherwood's decision. Because nothing in the record has changed, the law of the case doctrine counsels deference to Justice Sherwood's ruling. *See B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, 17-CV-02738 (MKB) (JO), 2018 WL 4445150, at *9 (E.D.N.Y. Sept. 18, 2018) (finding,

under the law of the case doctrine, "no basis to justify the Court considering [a new] argument at this time as the record before the Court has not changed" (collecting cases)); *see also Ge Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 387 (S.D.N.Y. 2013) (declining under law of the case doctrine to revisit arguments rejected by transferring judge in earlier ruling).

Moreover, there is no intervening change of controlling law that warrants reconsideration, since the preliminary injunction "showing that Plaintiff[s] must make under [New York] law is substantially similar to the one under federal law."[5] *Sterling v. Deutsche Bank Nat'l Tr. Co. as Trs. for Femit Tr. 2006-FF6*, 368 F. Supp. 3d 723, 727 n.7 (S.D.N.Y. 2019) (citing *Nobu Next Door, LLC v. Fine Arts Hous., Inc.*, 4 N.Y.3d 839, 840, 800 N.Y.S.2d 48, 833 N.E.2d 191 (2005)); *see Santos v. Reverse Mortg. Sols., Inc.*, No. 12–3296–SC, 2012 WL 4891597, at *7 (N.D. Cal Oct. 12, 2012) (declining to reconsider state court's entry of preliminary injunction because defendants identified no relevant change in law or circumstance except the change in venue from state to federal court); *Tehan v. Disability Mgmt. Servs., Inc.*, 111 F. Supp. 2d 542, 550–51 (D.N.J. 2000) (declining to dissolve pre-removal preliminary injunction, finding no changed circumstances because the federal and New Jersey preliminary injunction standards were "substantially similar"); *cf. Doe v. Zucker*, No. 17-CV-1005 (GTS/CFH), 2019 WL 111020, at *8 (N.D.N.Y. Jan. 4, 2019) (declining to apply law of the case doctrine "because the state court did not apply the same legal standard that this Court is required to apply for determining whether intervention is appropriate").

---

[5] *Compare Benihana*, 784 F.3d at 895 (requiring "(1) 'a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction" (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010))), *with Ingenuit, Ltd. v. Harriff*, 33 A.D.3d 589, 589, 822 N.Y.S.2d 301(2d Dep't 2006) (requiring "(1) a likelihood of success on the merits, (2) irreparable injury absent the grant of such preliminary injunctive relief, and (3) a balance of the equities favoring [plaintiff's] position" (collecting cases)).

Plaintiffs argue that the law of the case doctrine does not apply because Justice Sherwood merely declined to sign Plaintiffs' order to show cause. [ECF No. 49 at 3.] It is true that in New York state court, a justice's refusal to sign an order to show cause does not create law of the case. *See, e.g.*, *1901 Hennessy LLC v. Vicente*, 66 Misc.3d 148(A), 122 N.Y.S.3d 487, 2020 WL 896781, at *2 (2d Dep't 2020) (per curiam) (noting that "prior refusal to sign an order to show cause did not create law of the case" (citing *Lanzot v. Blecher*, 7 A.D.3d 408, 409, 776 N.Y.S.2d 478 (1st Dep't 2004))). However, Plaintiffs misrepresent Justice Sherwood's ruling. Justice Sherwood did not simply decline to sign Plaintiffs' order to show cause (a non-merits decision that would not create law of the case); rather, Justice Sherwood very clearly also denied *on the merits*, in a written opinion, Plaintiffs' motion for a preliminary injunction. [*See* ECF No. 21-2 ("The court declines to sign the Order to Show Cause and denies the preliminary injunction without prejudice . . . ."); *see also* ECF No. 23-2 at 27:23–28:2 ("I'm also going to decline to sign the TRO and I'm going to deny the motion for a preliminary injunction, without prejudice for you renewing the motion upon a proper showing of all of the requirements for obtaining a preliminary injunction.").] His ruling therefore is law of the case.

## II. Plaintiffs Have Not Carried Their Burden To Demonstrate Entitlement to Injunctive Relief

Even if the law of the case doctrine did not apply so as to warrant reconsideration, Justice Sherwood's conclusions are sound and Plaintiffs have not carried their burden of showing that they are entitled to a preliminary injunction.

A showing of "irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)). To show irreparable harm, a plaintiff "must demonstrate that absent a preliminary injunction [it] will suffer

10

an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (quoting *Freedom Holdings*, 408 F.3d at 114); *see also Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991) (noting that "a mere possibility of irreparable harm is insufficient"). A district court "must not simply presume irreparable harm." *Salinger*, 607 F.3d at 82 (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006)). Rather, the movant must present evidence that irreparable harm will in fact occur. *Id.*

### A. Plaintiffs Cannot Show Irreparable Harm Given the Inexcusable Delay in Seeking Injunctive Relief

Delay in seeking injunctive relief "'may, standing alone, preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency' upon which the availability of the remedy is predicated." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)); *see also Tom Doherty*, 60 F.3d at 39 (noting that district courts should consider delay in analyzing irreparable harm (collecting cases)). As the Second Circuit has explained, "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276–77 (2d Cir. 1985) (citations omitted). "There is no bright-line rule for how much delay is too much, but courts in this Circuit 'typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.'" *Monowise Ltd. Corp. v. Ozy Media, Inc.*, 17-CV-8028 (JMF), 2018 WL 2089342, at *2 (S.D.N.Y. May 3, 2018) (collecting cases).

Courts may excuse delays "[i]f the movant can provide a credible explanation for its inactivity." *Gidatex*, 13 F. Supp. 2d at 419. Courts have excused delays where the parties diligently pursue settlement negotiations. *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011); *see CSI Entm't, Inc. v. Anthem Media Grp., Inc.*, No. 15-CV-3508 (AMD) (RER), 2016 WL 11263667, at *6 (E.D.N.Y. Dec. 30, 2016) (collecting cases). Courts have also excused delays where "the harm largely is prospective and will arise from a discrete future event." *Metro. Taxicab Bd. of Trade v. City of New York*, No. 08 Civ. 7837(PAC), 2008 WL 4866021, at *6 (S.D.N.Y. Oct. 31, 2008) (quoting *Million Youth March, Inc. v. Safir*, 18 F. Supp. 2d 334, 340 (S.D.N.Y. 1998)).

Here, Plaintiffs commenced this action and sought injunctive relief nine months after sending the February 14 demand letters threatening legal action for injunctive relief. [*See* ECF No. 21 ¶ 2; ECF No. 21-1.] Such delay "indicates an absence of the kind of irreparable harm required to support a preliminary injunction." *Citibank*, 756 F.2d at 276.[6] Even if the Court

---

[6] *See, e.g.*, *Tough Traveler*, 60 F.3d at 968 (finding no irreparable harm where plaintiff delayed one year before moving for preliminary injunction); *Damone v. Teamsters Local 804*, 18-CV-4059 (LDH) (ST), 2018 WL 7821134, at *2 (E.D.N.Y. Oct. 30, 2018) (denying preliminary injunction due to unexcused nine-month delay (collecting cases)); *Monowise*, 2018 WL 2089342, at *2 ("Wherever the line distinguishing between acceptable and unacceptable delay may be, [plaintiff's nine-month] delay plainly falls on the unacceptable side."); *T–Mobile Ne. LLC v. Water Auth. of W. Nassau Cnty.*, 249 F. Supp. 3d 680, 684 (E.D.N.Y. 2017) (finding that seven-month delay indicated that alleged harm was not actual or imminent); *T-Mobile Ne. LLC v. Riverhead Water Dist.*, No. 15-CV-6310 (SJF)(AYS), 2016 WL 373968, at *3 (E.D.N.Y. Jan. 29, 2016) (finding no irreparable harm where plaintiff sued more than a year after sending letters to defendant); *Ins. Co. of the State of Pa. v. Lakeshore Toltest JV, LLC*, 15-CV-1436, 2015 WL 8488579, at *3 (S.D.N.Y. Nov. 30, 2015) (noting that a seven-month delay "undercuts a finding of irreparable injury"); *Dish Network, L.L.C. v. American Broad. Cos.* (*In re AutoHop Litig.*), No. 12 Civ. 4155, 2013 WL 5477495, at *10 (S.D.N.Y. Oct. 1, 2013) (noting that six-month delay weighed against finding of irreparable harm); *Fid. Info. Servs., Inc. v. Katz*, No. 1:09-CV-766 (LEK/DRH), 2009 WL 10721269, at *4 (N.D.N.Y. Aug. 4, 2009) (noting that eight-month delay weighed against finding of irreparable harm "given Plaintiff's knowledge of both [the] proposed project and [one defendant's] involvement"); *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 70 (E.D.N.Y. 2006) (finding no irreparable harm where plaintiff waited five months to sue); *Worldwide Sport Nutritional Supplements, Inc. v. Five Star Brands, LLC*, 80 F. Supp. 2d 25, 35 (S.D.N.Y. 1995) (finding that seven-month "delay between [plaintiff's] learning of the possible misappropriation [of trade secrets] and filing the Complaint and Order to Show Cause, is enough to defeat Plaintiff's motion for a preliminary injunction" (collecting cases)); *Andersen Consulting LLP v. American Mgmt. Sys., Inc.*, No. 95 Civ. 5428(KTD), 1995 WL 510042, at *4 (S.D.N.Y. Aug. 28, 1995) (finding it unreasonable and "incredible that, if the trade secrets are so valuable as to cause irreparable injury," plaintiff delayed more than one year to seek injunctive relief).

generously excused the first six weeks after Plaintiffs sent the demand letters given the purported efforts to resolve the matter, there remains an unexplained seven-month delay.  [*See* ECF No. 21 ¶ 2 (noting that "the parties discussed the claims").  *But see* ECF No. 23-2 at 7:17 ("[T]here was no settlement discussion.").]  *See Fashion Week, Inc. v. Council of Fashion Designers of America, Inc.*, No. 16-cv-5079 (JGK), 2016 WL 4367990, at *4 (S.D.N.Y. Aug. 12, 2016) (noting that six-month delay after settlement discussions ended "further counsels against a finding of irreparable injury"); *Grout Shield Distribs., LLC v. Elio E. Salvo, Inc.*, 824 F. Supp. 2d 389, 403 (E.D.N.Y. 2011) (finding that five-month delay after settlement discussions broke down "was unreasonable and undercut plaintiff's argument that its injury was actual and irreparable" (collecting cases)); *Christopher Norman Chocolates, Ltd. v. Schokinag Chocolates N.A., Inc.*, 270 F. Supp. 2d 432, 438 (S.D.N.Y. 2003) (finding that four-month delay after settlement negotiations ended indicated no irreparable harm).

      Plaintiffs argue that they were delayed significantly by the COVID-19 pandemic.  [ECF No. 21 ¶ 3.]  Plaintiffs made this same argument to Justice Sherwood, who was not persuaded.  [*See* ECF No. 23-2 at 7:22–7:24, 15:20–15:24, 19:9–19:21, 25:17-25:22.]  This Court is similarly not persuaded.  The COVID-19 pandemic does not excuse such an extensive delay.  *See Lawson v. U.S. Steel Corp.*, No. 19-13175, 2021 WL 37706, at *2 (E.D. Mich. Jan. 5, 2021) (noting that the public health crisis "cannot excuse 10 months of delays"); *Mohammad v. Gen. Consulate of the State of Kuwait*, No. CV 20-02513-MWF (MAAx), 2020 WL 7315345, at *3 (C.D. Cal. Oct. 27, 2020) (noting that "nor could the pandemic serve as an excuse for a delay of months"); *Martinez v. Costco Wholesale Corp.*, 336 F.R.D. 183, 188 (S.D. Cal. July 22, 2020) ("Plaintiff simply says the word 'COVID-19' as if it, in and of itself, is justification to excuse delays and dereliction without providing any support.").

Plaintiffs' claim that they waited to seek injunctive relief until it was clear that Krah USA was proceeding with its business plan with funding from Medalist rings hollow and cannot excuse their extensive delay. [ECF No. 20 at 22 n.8.] The Second Circuit has expressed skepticism as to whether "a court can or should properly reach any conclusions about the likelihood of irreparable harm from the strategic decisions of plaintiff's counsel to delay seeking relief until such time as the plaintiffs can actually demonstrate that relief is warranted." *Nicholson v. Scoppetta*, 344 F.3d 154, 167 n.6 (2d Cir. 2003). Here, however, the Court cannot blindly accept Plaintiffs' position because it is unsupported and directly contradicted by the record.

As Plaintiffs allege, Theetge, Graybeal, and Thalacker formed Krah USA on December 12, 2019. [ECF No. 22 ¶¶ 34–35; ECF No. 22-52; *see also* ECF No. 23-2 at 23:5–23:6 ("Isn't that a red flag to say, 'Uh-Oh, what's going on here.'").] On February 14, 2020, Plaintiffs sent the demand letters, describing with specificity the allegedly unlawful conduct of each Defendant, threatening to bring suit seeking injunctive relief, and relying on the same legal arguments they present here. [*See* ECF No. 21-1.] At the state court hearing, Plaintiffs admitted that they learned in July 2020 that Defendants had leased a facility. [ECF No. 23-2 at 14:6–14:10, 20:22–21:4.] Indeed, Plaintiffs' exhibit showing that Krah USA had leased the facility is dated September 11, 2020. [ECF No. 22-56.] *See Ideavillage Prods. Corp. v. A1559749699-1*, Nos. 1:20-cv-04679-MKV, 1:20-cv-04680-MKV, 1:20-cv-04681-MKV, 1:20-cv-04682-MKV, 1:20-cv-04683-MKV, 2020 WL 5663413, at *3 (S.D.N.Y. Sept. 23, 2020). In short, the record makes implausible any argument that Plaintiffs strategically waited to seek injunctive relief until they could demonstrate that such relief is warranted. *See Cuddle Wit, Inc. v. Chan*, No. 89 CIV. 7299 (JFK), 1989 WL 151267, at *2 (S.D.N.Y. Dec. 1, 1989) ("While the Court does not question plaintiff's strategic

decisions, it cannot give credence to [plaintiff's] assertion that [it] was absolutely unable to obtain any proof of [the] alleged infringement.").[7]

Moreover, Plaintiffs delayed not only in commencing this action but also in filing their renewed application. After Justice Sherwood denied injunctive relief, Plaintiffs did not appeal, move for reconsideration, or renew their application in state court. Instead, they waited almost two additional months to renew their application, only after the case was removed by Defendants and was before a new judge. This additional delay further indicates a lack of irreparable harm and instead speaks of gamesmanship and sharp litigation initiatives and tactics. *See Defend H20 v. Town Bd. of the Town of E. Hampton*, 147 F. Supp. 3d 80, 105 (E.D.N.Y. 2015) (finding no irreparable harm where plaintiffs delayed five months from filing suit to seeking preliminary injunction); *Richard A. Leslie Co., Inc. v. Birdie, LLC*, No. 07 Civ. 5933, 2007 WL 4245847, at *2 (S.D.N.Y. Nov. 26, 2007) (finding three-month delay between the filing of suit and motion for preliminary injunction to be "sufficiently long, in and of itself, to warrant denial of preliminary relief"); *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 281 (S.D.N.Y. 1998) (noting that unexcused three-month delay from filing suit to seeking a preliminary injunction weighed against finding of irreparable harm). While Plaintiffs claim that they had COVID-19 during this intervening time [ECF No. 49-1 ¶ 36], the Court is reluctant to excuse the additional delay since illness of the principals did not prevent counsel from filing the application and, in any event, Plaintiffs merely repackaged the application with a new federal court case number and caption.

---

[7] Plaintiffs' purported excuses appear to be nothing more than post-hoc rationalizations for their professed ignorance of the well-settled principle that a failure to act diligently and swiftly will militate against a showing of irreparable harm. [*See* ECF No. 23-2 at 21:17–21:21 ("If we [had an obligation to investigate], I'm entirely unaware of it, as a legal matter."); ECF No. 23-2 at 23:20–23:23 ("What obligation [to investigate and act]? I'm just unaware of any affirmative obligation that anyone has, under the law, to do anything of that sort at all. . . . I just don't know where that comes from."); ECF No. 23-2 at 25:3–25:5 ("I don't know that we have no [sic] obligation to be diligent, but no, I'm unaware of any affirmative obligations.").]

Plaintiffs argue that Medalist stipulated in a Confidentiality Agreement that any breach of that agreement would cause irreparable harm. [ECF No. 20 at 18–19.] However, the relief sought by Plaintiffs is far broader than addressing the confidentiality issues. In any event, although contractual provisions conceding irreparable harm "might arguably be viewed as an admission" of such harm, *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999); *see N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999), such contractual provisions are *not* dispositive, *see Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987) (noting that "the contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate"); *Erving v. Va. Squires Basketball Club*, 468 F.2d 1064, 1067 (2d Cir. 1972) ("The provision relative to 'obtaining an injunction or other equitable relief is merely declaratory of existing legal rights."). Parties may not contractually circumvent an independent judicial determination of irreparable harm. *See Bos. Laser, Inc. v. Qinxin Zu*, No. 3:07–CV–0791, 2007 WL 2973663, at *12 (N.D.N.Y. Sept. 21, 2007) (collecting cases); *see also Ardis Health, LLC v. Nankivell*, No. 11 Civ. 5013(NRB), 2011 WL 4965172, at *3 (S.D.N.Y. Oct. 19, 2011) ("A conclusory contract provision alone cannot establish irreparable harm."). The Confidentiality Agreement, therefore, is but one factor that the Court must consider. *Ardis Health*, 2011 WL 4965172, at *3 (collecting cases).

Here, given Plaintiffs' extreme delay in seeking relief and the serious detriment Defendants would suffer in light of their significant efforts to launch their business during that time, the Court declines to give the provision significant weight in connection with the broad preliminary injunction Plaintiffs seek. *See Gramercy Warehouse Funding I LLC v. Colfin JIH Funding LLC*, No. 11 Civ. 9715(KBF), 2012 WL 75431, at *4 (S.D.N.Y. Jan. 6, 2012); *Life Techs. Corp. v. AB Sciex Pte. Ltd.*, No. 11 Civ. 325(RJH), 2011 WL 1419612, at *5, *7–8 (S.D.N.Y. Apr. 11, 2011)

(finding no irreparable harm where "over nine months passed between plaintiffs' discovery of the alleged violation of the license agreement and the filing of this preliminary injunction motion" despite stipulation that monetary relief would be inadequate remedy); *see also M.B. Int'l W.W.L. v. PMI Am., Inc.*, No. 12 Civ. 4945(DLC), 2012 WL 3195761, at *9 (S.D.N.Y. Aug. 6, 2012) (finding no irreparable harm notwithstanding contractual provision that a breach would cause such harm); *Ardis Health*, 2011 WL 4965172, at *4 (finding that plaintiffs "have done no more here than rely on the language contained in the Work Product Agreement and have therefore not met their burden with respect to irreparable injury"). A stipulation of irreparable harm does not indefinitely preserve Plaintiffs' right to seek preliminary injunctive relief at any indeterminate point in the future. After inexcusably waiting nine months, Plaintiffs cannot now weaponize the Confidentiality Agreement at a time where injunctive relief would be catastrophic to Medalist's $11 million investment. *See Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 442–43 (E.D.N.Y. 2013) (noting that "a months-long delay before seeking an injunction suggests that a plaintiff . . . is merely seeking preliminary relief as a commercial strategy to impede a successful competitor").

### B. Plaintiffs Can Be Compensated by Money Damages

Assuming without deciding that Plaintiffs own trade secrets that Defendants are misappropriating, Plaintiffs have not shown that such misappropriation will cause irreparable harm. Generally, "the loss of trade secrets cannot be measured in money damages." *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984) (per curiam) (citing *Franke v. Wiltschek*, 209 F.2d 493, 497–98 (2d Cir. 1953)). But "[w]here a misappropriator seeks only to use those secrets—without further dissemination or irreparable impairment of value—in pursuit

17

of profit . . . an award of damages will often provide a complete remedy for such an injury." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118–19 (2d Cir. 2009).

Here, Plaintiffs have not shown that Defendants are disseminating any confidential information, or that there is even a risk of such dissemination. Plaintiffs only complain of Defendants' use of the alleged trade secrets. And Defendants "have no incentive to disseminate any trade secrets they may have misappropriated from plaintiffs, as [they] presumably would want to use that information and maintain its confidentiality for their own pecuniary benefit." *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 197 (E.D.N.Y. 2013); *see Faiveley*, 559 F.3d at 119 (noting that "the misappropriator will often have the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge"); *see also Invista S.À R.L. v. E.I. du Pont de Nemours & Co.*, No. 08 Cv. 7270(BSJ), 2010 WL 11712412, at *7 (S.D.N.Y. Mar. 31, 2010) (finding no irreparable harm where "there are allegations that a party misused trade secrets disclosed to it in violation of a license but there is no allegation that the defendant is publicly disclosing those trade secrets").

### C. The Balance of the Equities Tips Against Awarding Injunctive Relief

"In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987)). Here, the balance of the equities clearly tips in Defendants' favor given the breadth of the injunctive relief Plaintiffs seek and the resulting extreme harm and prejudice Defendants would suffer if an injunction were granted. Defendants have "taken costly steps during the period of delay that would be . . . undone by injunctive relief." *Tom Doherty*, 60 F.3d at 39; *see House of Hatten, Inc. v. Baby Togs, Inc.*, 668 F. Supp. 251 (S.D.N.Y. 1987) (finding that balance of equities tipped in defendant's favor,

especially since during the time plaintiff delayed in seeking injunctive relief, defendant invested over $700,000 in merchandise that would be lost if an injunction were entered). As the record makes clear, since December 2019, Krah USA has spent $11 million dollars in launching its business. [ECF No. 44 ¶¶ 27–28; ECF No. 45 ¶ 40; *see* ECF No. 47 ¶¶ 38–40.] Defendants claim that an injunction would force Krah USA out of business, resulting in a loss of Medalist's $11 million investment [ECF No. 45 ¶ 41; ECF No. 47 ¶ 43] and exposure to liability for breach of contract and other detriment. *Cf. Biosafe-One, Inc. v. Hawks*, 524 F. Supp. 2d 452, 467 (S.D.N.Y. 2007) (finding that balance of equities tipped in defendant competitor's favor because shutting down its website and effectively closing its business would have harmed it to a greater extent than plaintiff would have been harmed absent injunction). Entry of an injunction now—fourteen months after the dispute arose and twelve months after Plaintiffs sent the demand letters—would be highly prejudicial to Defendants such that the balance of the equities decisively tips in their favor. *See Defend H20*, 147 F. Supp. 3d at 105 (noting that the "clear and substantial prejudice" to defendants of $1.1 million in costs as a result of plaintiffs' five-month delay weighed against granting a preliminary injunction); *Agosta v. U.S. Postal Serv.*, 91 F. Supp. 2d 500, 503 (E.D.N.Y. 2000) (finding that the balance of the equities tipped in defendant's favor because it "would suffer significant harm and damage if an injunction issued").

\*     \*     \*

Accordingly, insofar as the law of the case doctrine does not foreclose consideration of Plaintiffs' application, Plaintiffs have failed to show irreparable harm given the inexcusable, extensive delay in seeking injunctive relief and the availability of money damages. Moreover, the balance of the equities militates against injunctive relief. In light of these glaring failures in

Plaintiffs' proof of entitlement to the relief they seek, the Court need not consider the other requirements for a preliminary injunction. *See, e.g.*, *Pryor*, 481 F.3d at 68.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion for a preliminary injunction is DENIED. Defendants shall answer, move, or otherwise respond to the Amended Complaint on or before February 23, 2021, as stipulated by the parties. [ECF No. 36.]

**SO ORDERED.**

**Date: February 12, 2021**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**